# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| GRANITE STATE INSURANCE COMPANY and NEW HAMPSHIRE INSURANCE COMPANY <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN BUILDING MATERIALS, INC., KB HOME, INC., and KB HOME TAMPA, LLC <br><br> Defendants. | Case No. |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, Granite State Insurance Company ("Granite State") and New Hampshire Insurance Company ("NHIC") file this Complaint for Declaratory Judgment against Defendants, American Building Materials, Inc. ("ABM"), KB Home, Inc., and KB Home Tampa, LLC (collectively, "KB Home"), and allege as follows:

**I. INTRODUCTION**

1. Plaintiffs Granite State and NHIC seek a declaration under 28 U.S.C. §§ 2201-2202 that they owe no duty to defend or indemnify Defendants ABM or KB Home under three policies of liability insurance issued by Granite State and three policies of liability insurance issued by NHIC (collectively, the "Policies") with respect to claims related to allegedly defective drywall supplied by ABM and installed by KB Home.

2. ABM and KB Home assert they are entitled to a defense and indemnification pursuant to one or more of the Policies.

3. There is an actual, present and bona fide controversy between the parties with respect to the coverage obligations of Granite State and NHIC to defend and indemnify ABM and KB Home pursuant to the Policies for the claims involving allegedly defective drywall.

## II. THE PARTIES

4. Granite State is an insurance company organized and existing under the laws of the State of Pennsylvania, with its principal place of business in New York, New York.

5. NHIC is an insurance company organized and existing under the laws of the State of Pennsylvania, with its principal place of business in New York, New York.

6. ABM is corporation organized and existing under the laws of the State of Florida, with its principal place of business in Tampa, Florida.

7. KB Home, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Los Angeles, California.

8. KB Home Tampa, LLC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Tampa, Florida.

## III. JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201 and 1332, as amended. This matter involves a dispute between citizens of different states and the value in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) and (c) because one or more of the Defendants resides and conducts business in this district, and a substantial part of the events giving rise to this claim occurred in this district.

11. Plaintiffs are entitled to declaratory relief under 28 U.S.C. § 2201.

## IV. GENERAL ALLEGATIONS

### A. Background

12. KB Home is in the business of building and offering for sale new homes in the states of California, Colorado, New Mexico, Arizona, Nevada, Texas, Louisiana, North Carolina, South Carolina, and Florida.

13. ABM is in the business of supplying building materials, primarily to residential and commercial drywall contractors, and ABM supplied drywall products to KB Home for use in residential building projects.

### B. The Defective Drywall Claims

14. Through correspondence dated July 5, 2009, July 6, 2009, and May 13, 2010, ABM provided Plaintiffs with notice of 35 claims brought by homeowners, each of which relates to the use of allegedly defective drywall supplied by ABM and used in homes constructed by KB Home (the "Pre-Suit Claims") (**Group Exhibit A**).

15. Each Pre-Suit Claim relates to a separate home allegedly constructed by KB Home. In the Pre-Suit Claims, KB Home asserts that it retained a consultant who concluded that the homes in question are being affected by unusual releases of sulfide gases from the drywall supplied by ABM. The Pre-Suit Claims assert that ABM supplied the allegedly defective drywall used in each of these homes pursuant to a Master Subcontract dated March 3, 2006.

16. Each Pre-Suit Claim asserts that KB Home is an additional insured under ABM's insurance policies, and that KB Home is therefore entitled to defense and

3

indemnification for the Pre-Suit Claims under these policies. Specifically, each Pre-Suit Claim asserts that ABM and its insurers are obligated "to remove and replace defective wallboard and to cure any discovered defective conditions resulting from defective wallboard (and/or reimburse KB Home for the associated costs thereof); and for defense and indemnification of any and all claims made by [the homeowners] as a result of defective wallboard."

17. On January 25, 2010, KB Home filed a lawsuit against ABM in the Circuit Court of Hillsborough County, Florida, captioned *KB Home Tampa LLC v. American Building Materials, Inc.*, No. 10-001432 (2010) (the "*KB Home* Action") (**Exhibit B**). The *KB Home* Action generally alleges that ABM is liable to KB Home for having supplied it with defective drywall, and that this drywall was ultimately installed in an unspecified number of homes built by KB Home.

18. ABM is named as a defendant in an Omnibus Class Action Complaint captioned *Wiltz et al. v. Beijing New Building Materials Public Ltd. Co. et al.*, 10-00361, which was initially filed on February 10, 2010 in the United States District Court for the Eastern District of Louisiana (the "*Wiltz* Action") (**Exhibit C**), but which has since been consolidated with the MDL captioned *In re Chinese-Manufactured Products Liability Litigation*, No. 09-02047. The *Wiltz* Action includes claims on behalf of homeowners against ABM on grounds that ABM constructed or installed defective drywall in the homes at issue.

C. **Drywall Studies**

19. Beginning in or about 2009, various Federal and State agencies, as well as private testing firms, analyzed drywall and reported that certain drywall, including

drywall manufactured in China, contains and emits sulfur-related chemical compounds that are associated with corrosion of metal, damage to other property, and complaints of odors and adverse health effects.

20. In October 2009, the United States Consumer Product Safety Commission ("CPSC") released several reports concerning testing upon Chinese and domestically-produced drywall. Those reports conclude that the Chinese drywall contained higher concentrations of elemental sulfur compared to the domestic drywall. Further, the Chinese drywall emitted higher levels of total volatile sulfur compounds than did the domestic drywall.

21. On or about November 23, 2009, the CPSC released reports regarding additional drywall testing. The CPSC reported that in a fifty-one home study, hydrogen sulfide gas was detected in homes with defective drywall in concentrations that were statistically higher than in homes without such drywall. Further, examination of copper wiring in homes containing defective drywall exhibited corrosion.

**D. The Granite State and NHIC Policies**

22. Granite State issued Commercial General Liability Policy Number 02-LX-009273143-0/000 to ABM effective from June 15, 2007 to June 15, 2008. (the "2007-08 Granite State Policy") **(Exhibit D)**.

23. Granite State issued Commercial General Liability Policy Number 02-LX-009273143-1/000 to ABM effective from June 15, 2008 to June 15, 2009. (the "2008-09 Granite State Policy") **(Exhibit E)**.

24. Granite State issued Commercial General Liability Policy Number 02-LX-009273143-2/000 to ABM effective from June 15, 2009 to June 15, 2010. (the "2009-10 Granite State Policy") (**Exhibit F**).

25. The 2007-08 Granite State Policy, the 2008-09 Granite State Policy, and the 2009-10 Granite State Policy (collectively, the "Granite State Policies") provide in part that Granite State will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" to which the Granite State Policies apply, and that Granite State "will have the right and duty to defend the insured against any 'suit' seeking those damages," subject to all terms and conditions set forth in the Granite State Policies.

26. NHIC issued Umbrella Policy Number 01-UD-000338726-0/000 to ABM effective from June 15, 2007 to June 15, 2008. (the "2007-08 NHIC Policy") (**Exhibit G**).

27. NHIC issued Umbrella Policy Number 01-UD-000338726-1/000 to ABM effective from June 15, 2008 to June 15, 2009. (the "2008-09 NHIC Policy") (**Exhibit H**).

28. NHIC issued Umbrella Policy Number 01-UD-000338726-2/000 to ABM effective from June 15, 2009 to June 15, 2010. (the "2009-10 NHIC Policy") (**Exhibit I**).

29. The 2007-08 NHIC Policy, the 2008-09 NHIC Policy, and the 2009-10 NHIC Policy (collectively, the "NHIC Policies") provide in part that NHIC "will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured

under an Insured Contract because of Bodily Injury [or] Property Damage ... that takes place during the Policy Period and is caused by an Occurrence," and that NHIC "shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions" of the NHIC Policies.

30. Defendants are not entitled to defense or indemnity under the Granite State Policies or the NHIC Policies unless Defendants first satisfy all conditions for defense or indemnity and coverage is not otherwise excluded.

31. The Total Pollution Exclusion Endorsement attached to the Policies bars coverage for "bodily injury" and "property damage," if any, associated with defective drywall, arising from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants," as that term is defined in the Policies.

32. Coverage is barred to the extent that Defendants fail to qualify as insureds and/or additional insureds and/or fail to succeed to the rights of ABM under the Policies.

33. Coverage is barred to the extent Defendants pay sums for which they have no legal liability.

34. Coverage is barred to the extent that a claimant seeks relief from an insured that does not constitute "damages," as that term is used in the Policies. Equitable relief, including medical monitoring or economic losses associated with defective drywall does not constitute covered damages within the Policies.

35. Coverage is barred for damages that do not constitute "bodily injury" or "property damage," as those terms are defined in the Policies. The mere presence of defective drywall is not "property damage" and there is no coverage under the Policies for any costs arising out of the process of repairing or replacing the drywall.

36. Coverage is barred to the extent any "bodily injury" or "property damage" associated with defective drywall is not the result of an "occurrence," as that term is defined in the Policies.

37. Coverage is barred to the extent that "bodily injury" or "property damage," if any, associated with defective drywall did not occur during the policy periods in issue.

38. "Bodily injury" or "property damage," if any, associated with defective drywall that is continuing or progressive over any length of time is one "occurrence" that occurs only when the "bodily injury," "property damage," or both first commenced.

39. Coverage is barred to the extent that continuing or progressive "bodily injury" or "property damage" associated with defective drywall, if any, first commenced prior to the relevant inception dates of the Policies.

40. Coverage is barred for "bodily injury" or "property damage," if any, for which the insured is obligated to pay damages associated with defective drywall by reason of the assumption of liability in a contract or agreement.

41. Coverage is barred for "property damage," if any, to an insured's product, associated with defective drywall.

42. Coverage is barred for "property damage," if any, associated with defective drywall to an insured's work that is included in the "products completed operations hazard," as defined in the Policies.

43. Coverage is barred for "property damage," if any, to "impaired property," as defined by the Policies, or to property that has not been physically injured, associated with defective drywall, arising out of a defect in an insured's product or work, or a delay

or failure by an insured or anyone acting on an insured's behalf to perform a contract or agreement in accordance with its terms.

44. The Policies do not provide a duty to defend until a "suit" has been filed against the insured seeking damages that would be covered by the Policies. Because no suit has been filed against the Defendants in connection with the Pre-Suit Claims, Plaintiffs have no present obligation to provide a defense to Defendants under the Policies for the Pre-Suit Claims.

45. Coverage under the NHIC Policies is barred by an endorsement entitled Pre-Existing Damages And/Or Defects, which provides that the NHIC Policies do not apply to "bodily injury" or "property damage" "arising out of, based on or involving the continuation of in the period of this policy, any pre-existing damages and/or defects known to any 'insured' prior to the effective date of this policy." This exclusion applies whether or not the insured's legal obligation to pay for such damages was established before the effective dates of the NHIC Policies.

46. Coverage is barred because Defendants failed to notify Chartis of the drywall claims as soon as practicable, which is a condition precedent to coverage under the Policies.

47. Coverage under the NHIC Policies is barred because the NHIC Policies contain a Claims Reporting Endorsement requiring immediate written notice of claims for 25% or more of the limits of insurance listed in the Schedule of Underlying Insurance, and Defendants failed to notify Chartis of the drywall claims in compliance with this endorsement.

E. **Communications Between Defendants, Granite State, and NHIC**

48. Granite State and NHIC issued reservation of rights letters to Defendants advising Defendants that Granite State and NHIC were reserving rights to decline coverage for all of the Pre-Suit Claims. The reservation of rights letters referred to the policy terms on which Granite State and NHIC may rely to decline coverage, including the terms noted herein.

## COUNT I
## FOR A DECLARATION THAT GRANITE STATE
## HAS NO DUTY TO DEFEND OR INDEMNIFY DEFENDANTS

49. Granite State and NHIC incorporate the allegations set forth within Paragraphs 1 through 48 as if fully set forth herein.

50. A controversy exists between Granite State and Defendants regarding the obligations of Granite State to defend and indemnify Defendants under the Policies with respect to claims arising from allegedly defective drywall supplied and installed by Defendants.

51. The interpretation of the applicable terms of the Policies at issue is governed by Florida law.

52. Coverage is limited or eliminated by the terms of the Policies for the alleged damages for which Defendants have or will seek coverage under the Policies.

53. Accordingly, Granite State has no duty under the Policies to defend or indemnify Defendants for the Pre-Suit Claims, and no duty to defend or indemnify ABM for the *KB Home* Action or the *Wiltz* Action.

## COUNT II
## FOR A DECLARATION THAT NHIC HAS
## NO DUTY TO DEFEND OR INDEMNIFY DEFENDANTS

54. Granite State and NHIC incorporate the allegations set forth within Paragraphs 1 through 48 as if fully set forth herein.

55. A controversy exists between NHIC and Defendants regarding the obligations of NHIC to defend and indemnify Defendants under the Policies with respect to claims arising from allegedly defective drywall supplied and installed by Defendants.

56. The interpretation of the applicable terms of the Policies at issue is governed by Florida law.

57. Coverage is limited or eliminated by the terms of the Policies for the alleged damages for which Defendants have or will seek coverage under the Policies.

58. Accordingly, NHIC has no duty to defend or indemnify Defendants for the Pre-Suit Claims, and no duty to defend or indemnify ABM for the *KB Home* Action or the *Wiltz* Action.

**WHEREFORE**, Granite State and NHIC request the following declaratory relief:

57. A judgment in favor of Granite State declaring that Granite State has no duty under the Policies to defend or indemnify Defendants with respect to any claims or damages arising from allegedly defective drywall supplied or installed by Defendants;

58. A judgment in favor of NHIC declaring that NHIC has no duty under the Policies to defend or indemnify Defendants with respect to any claims or damages arising from allegedly defective drywall supplied or installed by Defendants;

59. Such other relief as the Court may deem just and proper.

Date: July 12, 2010.

Respectfully submitted,

*/s/ Lindy L. Eberfeld*

Cindy L. Ebenfeld, Esq.
Florida Bar No. 980579
HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104
Cooper City, Florida 33026
Tel: (954) 624-8700
Fax: (954) 624-8064
cebenfeld@mhickslaw.com
         -and-
Joseph A. Hinkhouse, Esq.
Frank E. Valenti, Esq.
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson Avenue, Suite 3400
Chicago, Illinois 60601
Tel: (312) 784-5400
Tel: (312) 784-5443
(Direct: Richard Hodyl)
Fax: (312) 784-5499
jhinkhouse@hww-law.com
fvalenti@hww-law.com
*Counsel for Plaintiff*

4838-9044-7622, v. 1
g:\chartis\american building materials\pldg\complaint.doc