IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GRANITE STATE INSURANCE
COMPANY and NEW HAMPSHIRE
INSURANCE COMPANY,

        Plaintiff,

vs.

CASE NO.: 8: 10-cv-01542-JSM-EAJ

AMERICAN BUILDING MATERIALS,
INC., KB HOME, INC., and KB HOME
TAMPA, LLC,

        Defendants.

_____/

**KB HOME'S MOTION FOR CONTINUANCE OF SUMMARY JUDGMENT
PROCEEDINGS PURSUANT TO RULE 56 (d) AND MEMORANDUM OF LAW**

        Defendants, KB Home, Inc. and KB Home Tampa, LLC ("KB Home"), pursuant to Fed. R. Civ. P. 56(d), move for a continuance of summary judgment proceedings in this declaratory action to allow for the completion of discovery on significant threshold choice of law issues. In support hereof, KB Home submits the accompanying Memorandum of Law.

**MEMORANDUM OF LAW**

**I.    INTRODUCTION AND SUMMARY**

        In this action, Granite State Insurance Co. ("Granite State") and New Hampshire Insurance Co. ("NHIC") (collectively, the "Insurer") sues American Building Materials, Inc. ("ABM"), its named insured under certain commercial general liability (CGL) policies and umbrella policies attached as exhibits to the Complaint (the "Policies"), and KB Home, an Additional Insured under the Policies and also the injured party plaintiff in underlying litigation. The Insurer seeks a declaratory judgment that the Insurer has neither a duty to defend nor a duty

to indemnify either ABM or KB Home, as Additional Insured, for property damage arising out of the supply of imported Chinese drywall by ABM, which Chinese drywall was installed in homes built by KB Home. The Insurer has filed a Motion for Summary Judgment that argues that the so-called "total" pollution exclusion contained in the policies applies under Florida law to exclude coverage for property damage arising from Chinese drywall. (DE. 30)

However, a significant, unresolved threshold issue exists in this case regarding which state's law is applicable. The agent identified on each of the Policies, Virtual MGU Insurance Agency, Inc., is located in Waltham, Massachusetts ("VMGU"). (DE 1, Ex. D through I – see Declaration pages) While Insurer's Motion notes that a Tampa firm, Lassiter-Ware Insurance, Inc. ("Lassiter-Ware") "produced" the Policies, based upon very preliminary investigation, it does not appear that Lassiter-Ware is authorized to issue, write or bind insurance policies for Granite State or for NHIC. See, *Declaration of Charles A. Carlson, ¶¶ 4, 5*. Further, the executive offices of the Insurer identified on the policy are located in New York, New York. (DE 1, Ex. D through I – see Declaration pages).

Florida courts follow the *lex loci contractus* doctrine in determining which state's law applies to an insurance policy. Through the use of agents and binders or binding agreements, insurance contracts can be formed in a variety of ways. Where, as in this case, insurers, agents and insureds are located in multiple states, the insurance contract is potentially formed in any of those states, depending on the specific circumstances. However, when the only agent located in Florida apparently does not have authority to write or bind Granite State or NHIC policies (*Declaration of Charles A. Carlson, ¶¶ 4, 5*.), the likelihood is that the Policies were formed outside of Florida.

Just last October, the district court in the Southern District of Florida determined that California law applied to an insurance policy in a coverage dispute arising out of Chinese drywall, even though the affected homes, the contractor and the subcontractor were all located in Florida.  *See, Order Granting Peninsula II's Motion on Choice of Law and Denying American Home's, Landmark's and Westchester's Motions on Choice of Law, American Home Assurance Co. v. Peninsula II Developers, Inc., et al.,* Case No. 09-23691-CIV-Seitz/O'Sullivan, attached hereto as Exhibit "A."

KB Home has tendered discovery, including third party subpoenas, calculated to verify exactly how *and where* the subject Policies were formed which, in turn, will govern the proper state's law to apply in this case.  The Insurer's Motion for Summary Judgment relies exclusively upon the pollution exclusion as interpreted under Florida law as its basis for summary judgment. (DE 30)  Choice of law is of paramount importance in this case, as the law of Massachusetts and the law of New York are different in significant respects from the law of Florida as pertains to interpretation of the pollution exclusion.  Therefore, as discussed below, KB Home respectfully urges that the Court grant a brief continuance of summary judgment proceedings, including KB Home's response to the Insurer's Motion, until the discovery cut-off (July 5, 2011) to allow for completion of the discovery bearing on the choice of law issue.

**II.     ARGUMENT**

    **A.     KB Home, as the Injured Party, has Standing to Fully Litigate the Coverage Issues Presented in this Case, Including the Choice of Law Issue.**

In the context of an insurance coverage action, an "actual controversy" exists between an injured party and the insurer for the alleged tortfeasor sufficient to support the requirements of the Federal Declaratory Judgment Act.  *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S. Ct. 510, 512-513 (1941).  An injured party, such as KB Home, who has been

named in a coverage lawsuit between insurer and its named insured, has standing to litigate the named insured's coverage issues. *Id. See, Dairyland Insurance Co. v.* Makover, 654 F. 2d 1120, 1123 (5th Cir. 1981)(injured party as potential judgment creditor has standing to adverse coverage decision); *Monticello Insurance Co. v. Dynabilt Manufacturing Company, Inc.*, 2005 WL 3019241 (M.D. Fla. 2005)(dismissal of coverage action after default judgment against named insured would prejudice injured party who has standing in its own right to litigate coverage issues); *Mid-Continent Casualty Company v. Frank Casserino Construction, Inc.*, 2010 WL 2431900 (M.D. Fla. 2010) (same).

Other federal Circuits recognize the injured party's standing in this context. *See, e.g., Federal Kemper Ins. Co. v. Rauscher*, 807 F. 2d 345, 354 (3rd Cir. 1986) ("The injured party has an independent and not derivative right to be heard…."); *Hawkeye-Security Ins. Co. v. Schulte*, 302 F. 2d 174, 177 (7th Cir. 1962) (injured party is not a nominal party, but party with standing to appeal adverse coverage decision). Florida law also recognizes the right of the injured party to contest an insurer's coverage action against a named insured. *Tomlinson v. State Farm Fire and Cas. Co.*, 579 So. 2d 211, 212 (Fla. 2nd DCA 1991) (Florida Statutes operate only to bar lawsuits by injured parties *against* insurers, not the defense of coverage actions brought by insurers); *Monticello Insurance Co. v. Dynabilt Manufacturing Company, Inc.*, 2005 WL 3019241 (M.D. Fla. 2005) (Florida recognizes standing of injured party to defend in insurer's coverage action).

Therefore, KB Home has standing to be heard, in its own right and not derivatively, in opposition to the Insurer's complaint and in opposition to the Insurer's Motion for Summary Judgment, not only as pertains to the Insurer's duty to defend or to indemnify KB Home as an

Additional Insured, but also as pertains to coverage of ABM under the Policies, including the choice of law relative to interpretation of the Policies.

### B. There is Reasonable Likelihood that Florida Law Does Not Apply in this Case.

Florida applies the *lex loci contractus* doctrine to determine choice of law in insurance coverage disputes. *State Farm Mut. Automobile Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006); *Rando v. Gov't Employees Ins. Co.*, 556 F. 3d 1173, 1176 (11th Cir. 2009). Under this doctrine, in the absence of a choice of law provision in the policy, governing law is "the law of the state in which the contract is made, i.e., where the last act necessary to complete the contract is done." *Fioretti v. Massachusetts Gen. Life Ins. Co.*, 53 F. 3d 1228, 1235 (11th Cir. 1995). Determining where the "last act" occurred is a factually intensive inquiry into the specific circumstances of each case.

For instance, in *CNL Hotels & Resorts, Inc. v. Houston Cas. Co.,* 505 F. Supp. 2d 1317 (M.D.Fla. 2007), the "last act" necessary to form the policy was when an intermediate broker issued a binder that initiated coverage. *Id.* at 1321. In *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F. 3d 1089 (11th Cir. 2004), the last act necessary to the formation of an insurance policy was the communication of an oral binder to the insured. *Id.* at 1093. In the context of insurance law, insurance companies and insurers are bound by the acts of their agents and binding of insurance coverage is a formative event in the context of insurance policies. *See, Celotex Corp. v. AIU Ins.Co.*, 194 B.R. 668, 674 (Bankr. M.D. Fla. 1996)("binding of insurance coverage …. [is the] culmination of the business relationship between the parties" to an insurance policy.)

Recently, in the attached Order entered in the *Peninsula II* case, Judge Seitz decided that California law applied in a coverage dispute relating to damages arising out of Chinese drywall.

*Order,* Ex. A*,* pp. 3, 17-18. As in this case, both the insurance company and an agent involved with the policy were located outside of Florida, in New York and California, respectively. *Id.* at 13. In the specific circumstances of the *Peninsula II* case, the court found that the terms of the policy binder were accepted in California and that the policy binder was received in California. *Id.* at 17-18. Noting that "common sense" suggested application of Florida law because both the risk and the insured parties were located there, the court, after detailed analysis, concluded that the *lex loci* doctrine required application of California law. *Id.* at 12, 17-18.

Accordingly, the fact that the named agent in each of the Policies is located in Massachusetts strongly suggests a distinct likelihood that the Policies were bound *outside* of the state of Florida, in Massachusetts. This is particularly true given that preliminary, informal investigation indicates that Lassiter-Ware, the local agent who, according to the Insurer "produced" the Policies, does not appear to have the authority to write, issue or bind Granite State or NHIC policies. (DE 30, pp.7). *Declaration of Charles A. Carlson,* ¶¶ 4, 5. On the other hand, Virtual MGU Insurance Agency ("VMGU") of Latham, Massachusetts is identified on the Insurer's Policies and appears to have been assigned an agency number - 0000085251. (DE 1, Ex. D through I – see Declaration pages). Therefore, it appears that VMGU is an agency authorized by the Insurers to write, issue and bind Granite State and NHIC policies.

      **D.**    **The Insurer's Motion for Summary Judgment Fails to Support Application of Florida Law.**

The Insurer's Motion contains a brief section arguing that Florida law applies in this case. (DE 30, pp. 7) That section relies on cases of dubious precedential value and cites to facts, unsupported by record evidence, which are irrelevant to the proper choice of law analysis.

Insurer's Motion suggests that the "most significant relationship" test may apply in this context and cites to three Eleventh Circuit cases to support that position. (DE 30, pp. 7).

However, in the cited cases (DE 30, pp. 7) the Eleventh Circuit is attempting to predict how the Florida Supreme Court would decide the question of the proper test for choice of law in the context of an insurance policy. See, *Shapiro v. Associated Int'l Ins. Co.*, 899 F. 2d 1116, 1118 (11th Cir. 1990)("we must determine which state's substantive law the Florida Supreme Court would choose…."; *LaFarge Corp. v. Travelers Indem. Co.*, 118 F. 3d 1511, 1516 (11th Cir. 1997)(finding *Shapiro's* reasoning as to what test Florida courts would apply to be persuasive); *Great Am. Ins. Co. v. Sadiki*, 170 Fed. Appx. 632 (11th Cir. 2006)(declining to certify to Florida Supreme Court and following *LaFarge* and *Shapiro).* Subsequent to the decisions in the cited cases, however, the Florida Supreme Court decided *Roach* which squarely holds that the *lex loci* doctrine applies except in narrow cases where a Florida citizen is in need of protection and a paramount public interest is present, factors not present in this case. *Roach*, 945 So. 2d at 1169 (Fla. 2006). Therefore, the cases relied upon by the Insurer in arguing that Florida law applies in this case lack value as precedent for the point of law for which they are cited. *See*, *CNL Hotels & Resorts, Inc. v. Houston Casualty Co.*, 505 F. Supp. 2d 1317, 1320 (M.D. Fla. 2007)(Florida adheres to the *lex loci* rule).

Furthermore, Insurer's Motion lists seven facts that are unsubstantiated by citation to evidence in the record which it contends support the application of Florida law. (DE 30, pp. 7) However, none of the cited factors are directly relevant to the question of where the Policies were formed. None of the factors identified have any bearing on where the last act necessary to the formation of the Policies took place. *See, CNL Hotels & Resorts, Inc.,* 505 F. Supp 2d at 1320 (cited factors including principal place of business of insured, place of issuance or delivery of physical policy, state of licensure of insurer, rider referencing a particular state law are

7

irrelevant to *lex loci* analysis). Therefore, Insurer's Motion is factually deficient regarding the choice of law question.

Because Insurer is the summary judgment movant and also the plaintiff bearing the burden of proof on all elements of its case at trial, Insurer has the initial burden on summary judgment of "identifying for the district court those portions of the record which it believes demonstrate the absence of a genuine material fact." *Cohen v. United Am. Bank of Central Fl.*, 83 F. 3d 1347, 1349 (11th Cir. 1996). In light of its failure to present any facts or law to support its conclusion that Florida law applies to the interpretation of the Policies, Insurer has failed to meet its initial summary judgment burden. On that basis, Insurer's summary judgment motion should be denied. However, KB Home urges that summary judgment proceedings be continued so that discovery can proceed allowing facts revealing the last act necessary for formation of the policies can be revealed and considered so that the proper choice of law determination may be made.

> E. **Rule 56(d) Contemplates a Continuance of Summary Judgment Proceedings under the Circumstances Presented in this Case.**

Rule 56(d) [formerly Rule 56(f)] provides as follows:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)   defer considering the motion or deny it;
> (2)   allow time to obtain affidavits or declarations or to take discovery; or
> (3)   issue any other appropriate order.

*Fed. R. Civ. P.* 56(d)(2011). Under Rule 56(d), the party seeking additional time for discovery must show how, with the benefit of that discovery, it intends to rebut the motion for summary judgment. *Wingster v. Head*, 318 Fed. App'x 809, 813 (11th Cir 2009). Summary judgment

should not ordinarily be granted before discovery has been completed. *Alabama Farm Bureau Mut. Cas. Co v. American Fidelity Life Ins. Co.,* 606 F. 2d 602, 609 (5th Cir. 1979); *Murrell v. Bennett*, 615 F. 2d 306, 310 (5th Cir. 1980)[1]. However, the Federal Rules do permit a plaintiff to move for summary judgment at any time after 20 days from the commencement of the action. *Fed. R. Civ. P.* 56(a) (2011). As there is no blanket prohibition on the granting of summary judgment before discovery, Rule 56(d) specifically addresses the question of summary judgment before discovery has taken place. *Reflectone, Inc. v. Farrand Optical Company, Inc.*, 862 F. 2d 841, 843 (11th Cir. 1989).

A party seeking relief under Rule 56(d) "may not rely upon vague assertions that additional discovery will produce needed, but unspecified facts." *Id*  Rather, a Rule 56(d) motion must articulate how postponement of the summary judgment proceedings will allow for discovery to rebut the motion for summary judgment. *Id.* Rule 56(d) is "infused with a spirit of liberality." *Wallace v. Brownell Pontiac-GMC Co.*, 703 F. 2d 525, 527 (11th Cir. 1983). In fact, "the law of [the Eleventh] Circuit recognizes that the interests of justice will sometimes require a district court to postpone its ruling on a motion for summary judgment even though the technical requirements of Rule 56(f) [now 56(d)] have not been met." *Snook v. Trust Company of Georgia Bank of Savannah*, 859 F. 2d 865, 871 (11th Cir. 1988).

### 1. KB Home has complied with the technical and substantive requirements of Rule 56(d).

In support of this motion, KB Home submits the affidavit of its assistant general counsel, Travis Cope. (hereinafter, *KB Aff.*) Mr. Cope testifies that each of the Policies identify an agent located in Waltham, Massachusetts, and an insurer located in New York, New York. (*KB Aff.* ¶

---

[1] The Eleventh Circuit has adopted as binding precedent the decisions of the Fifth Circuit rendered before October 1, 1981. *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

3)   The Affidavit identifies pending discovery, including Requests for Production and Interrogatories to both Granite State and NHIC containing discovery requests calculated to determine what state's law applies to the interpretation of the policies.  (*KB Aff.* ¶ 4) Included in such discovery are interrogatories inquiring about the relationship and signing authority of the agent identified on the Policies and the agent identified in the Insurer's Motion as the "producer" of the Policies, interrogatories inquiring about communications with the insurance agents pertaining to the separate formation of each policy; and interrogatories inquiring about the manner in which each of the Policies was bound or formed.  (*KB Aff.* ¶ 4, DE 30, pp. 7)  Also included are requests for production seeking all written documents pertaining to the foregoing, along with agency agreements, documents reflecting the respective authority of agents participating in the procurement of the policies, and any written binders or binder agreements.  (*KB Aff.* ¶ 4 )

Additionally, KB Home has issued third party document subpoenas to VMGU, the Massachusetts agent identified on the policy, and to Lassiter-Ware of Tampa, identified by the Insurer as the "producer" of the Policies.  (DE 30, pp. 7) (*KB Aff.* ¶ 5)  Depositions of those third parties are being scheduled.  Similar to the discovery tendered to the Insurer, the third-party discovery is calculated to acquire the facts necessary to determine where the "last act" necessary to the formation of the Policies occurred, and thus the particular state's law which is applicable.  (*KB Aff.* ¶ 5)

KB Home's Motion, as supported by affidavit proof, complies with the requirements of Rule 56(d).  KB Home does not rely upon "vague assertions."  Instead, KB Home has already set in motion a specific discovery plan specifically calculated to verify a specific set of facts.  The facts expected to be obtained in discovery are those specific details regarding the manner of

formation of the Policies and the place at which such formation occurred. KB Home expects those facts to show that the "last act" necessary to formation of the Policies occurred outside the state of Florida.

The facts sought in discovery are not in possession of KB Home, but rather are in possession of the Insurer, ABM or the participating agents. *See, Walters v. City of Ocean Springs*, 626 F. 2d 1317, 1321 (5th Cir. 1980)("The parties comparative access to the witnesses or material relevant to the disposition of the Rule 56(f) motion is a particularly salient factor for the trial court to consider in exercising discretion.") KB Home is not seeking an extension of the discovery cut-off of July 5, 2011. (DE 27) Instead, KB Home requests only a short extension of the deadline for its opposition to the Insurer's Motion for Summary Judgment to allow it to obtain in discovery the factual information necessary to prove that the Policies were not formed in Florida and that Florida law does not apply.

### 2. The Choice of Law Determination in this Case is Highly Material in the Context of the Insurer's Motion for Summary Judgment.

The Insurer's Motion for Summary Judgment relies exclusively upon arguments that the pollution exclusion in the Policies as interpreted by Florida law applies to exclude coverage for the underlying damages arising from Chinese drywall. (DE 30). The Insurer's Motion contends that *Deni Associates of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.,* 711 So. 2d 1135 (Fla. 1998) holds that the pollution exclusion is unambiguous, and that the pollution exclusion is not

limited in application to environmental or industrial pollution[2]. (DE 30, pp. 9-13) The Insurer's Motion argues that Deni and its progeny control and that the pollution exclusion in the Policies applies to exclude coverage for damages arising from Chinese drywall[3]. (DE 30, pp. 9-19)

Both Massachusetts and New York law directly contrast with *Deni*. For example, in *Atlantic Mut. Ins. Co. v. McFadden*, 595 N.E. 2d 762 (Mass. 1992), the Massachusetts Supreme Court held that the pollution exclusion at issue in that case did not apply to damages arising from lead paint in a private residence. *Id.* at 764. In rejecting application of the exclusion, the Court noted that terms used in the exclusion such as "discharge," "dispersal," "release," and "escape" "are terms of art in environmental law which generally are used with reference to damage or injury caused by improper disposal or containment of hazardous waste." *Id.* Considering how an "objectively reasonable insured" would read the policy, the Court concluded that such an insured would reasonably have understood the pollution exclusion to "exclude coverage for damages caused by certain forms of industrial pollution," but not for injury caused by leaded materials in a private residence. *Id. See also, Western Alliance Insurance Company v. Gill*, 686 N.E. 2d 997, 999-1002 (Mass. 1997)(pollution exclusion did not apply to exclude coverage for

---

[2] In *Deni,* the Florida Supreme Court departed from a long line of cases from other jurisdictions which examine the insurance industry's intention behind the so-called pollution exclusion and which, based in part on that publically stated intention relied upon by regulators, hold that the pollution exclusion is limited to environmental or industrial pollution. *See*, *Deni*, 711 So. 2d at 1138 (discussion of cases holding exclusion limited to industrial and environmental pollution); *FC&S Bulletin,* "Chinese Drywall: The Next Big Issue," p. 3 ("The exclusion was intended to limit or exclude coverage for environmental contamination, not product liability claims.")

[3] There are no appellate decisions in Florida that apply the pollution exclusion to damages from Chinese drywall. However, Insurer does rely extensively upon *General Fidelity Insurance v. Foster*, 9:09-cv-80743-KMM (S.D. Fla., March 24, 2011), a district court decision ruling on summary judgment that the total pollution exclusion applies to exclude coverage for damages arising from Chinese drywall. (DE 30, pp. 9-11, 15-17, 21-23, Ex. "D") That case is on appeal to the Eleventh Circuit (Appeal Number: 11-11888-D). KB Home has separately filed a Motion to Stay Summary Judgment Proceedings pending disposition of the *Foster* appeal, which will likely be the first appellate ruling on the pollution exclusion in the context of Chinese drywall.

damages from carbon monoxide fumes from restaurant oven). Accordingly, there seems to be little question that the pollution exclusion in the Policies will be found to be inapplicable should Massachusetts law be applied.

Similarly, the pollution exclusion has been construed far more narrowly under New York law than it has been in Florida. New York cases construe pollution exclusion clauses as applying only to environmental pollution. *See, Storey Run Co. v. Prudential-LMI Comm'l Ins. Co.*, 47 F. 3d 34, 37 (2nd Cir. 1995)(citing New York cases so holding). Under New York law, the general purpose of pollution exclusions is to exclude coverage for environmental pollution, and the cases decided under New York law have so limited the scope of the exclusion. *Id. See, Janart 55 West 8th LLC v. Greenwich Ins. Co.*, 614 F. Supp. 2d 473, 477-480 (S.D.N.Y. 2009)(coverage for damages for mercury leak in apartment building not excluded by pollution exclusion). *See also, Continental Cas. Co. v. Rapid-American Corp.*, 609 N.E. 2d 506 (N.Y. Ct.App. 1993)(ambiguity of pollution exclusion is shown by examining the purpose of the clause – to exclude coverage for environmental pollution). Therefore, it is plain that application of New York law to the pollution exclusion would require an analysis of the pollution exclusion that is materially different from the analysis in Insurer's Motion.

> **3.  The balancing test under Rule 56(d) tilts decidedly in favor of granting KB Home's Motion.**

"Whether to grant or deny a Rule 56(f) [now 56(d)] motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party." *Harbert International, Inc. v. James*, 157 F. 3d 1271, 1280 (11th Cir. 1998). In this case, KB Home has clearly shown its need for the short continuance in order to complete its discovery within the parameters of the discovery completion schedule set forth in the Court's Case Management Order. (DE 27) While the Insurer may argue that KB

Home could have predicted that Insurer would urge application of Florida law, and thus commenced discovery earlier, the Insurer's Motion was in fact the first time the Insurer took a position that Florida law applies in this case. KB Home acted diligently thereafter in serving discovery, responses to which are needed to oppose the motion. KB Home's discovery is returnable within the discovery period defined by the Court. (DE 27). Granting of KB Home's motion will not cause delay in the progress of the case, nor the alteration of any other deadlines established by the Court, including the August 1, 2011 dispositive motion deadline. The Insurer will not be prejudiced by the short delay. Nor will the Insurer be prejudiced by the reasonable discovery initiated by KB Home that is pending at this time. Further, the parties, the Court and public policy in general will benefit by the application of the proper state's law according to the choice of law rules prevailing in Florida.

On the other hand, denial of KB Home's motion will deny KB Home and ABM the ability to fully respond to the Insurer's Motion, and the ability to present a legitimate, potentially dispositive defense to the Motion. Denial of this motion will effectively foreclose KB Home's ability to complete meaningful discovery within the period defined by the Court merely because the Insurer filed a Motion for Summary Judgment two full months before the discovery cut-off. Denial of this motion may result in the application of the wrong state's law, and in an improper choice of law analysis.

Based upon analysis of these factors, KB Home's need for the relief requested herein substantially outweighs the minimal burden to the Insurer. The balance prescribed under Rule 56(d) tilts significantly in favor of granting this motion and permitting a short continuance for the legitimate reasons stated herein.

**III.     CONCLUSION**

For all of the foregoing reasons, KB Home respectfully requests that this Honorable Court grant this motion and order that summary judgment proceedings in this case are continued until such time as KB Home files its response to the pending Insurer's Motion for Summary Judgment (DE 30), and that such response shall be due on or before the close of discovery, July 5, 2011.

Respectfully submitted,

BARNETT, BOLT, KIRKWOOD,
LONG & MCBRIDE

/s/ Charles A. Carlson
Charles A. Carlson
Florida Bar No. 716286
Amy E. Stoll
Florida Bar No. 150959
601 Bayshore Boulevard
Suite 700
Tampa, FL 33606
Telephone (813) 253-2020
Fax (813) 251-6711

Attorneys for KB Home

**CERTIFICATE OF RULE 3.01(g) CONFERENCE**

Pursuant to Local Rule 3.01(g), KB Home's undersigned counsel certifies that counsel of record has been contacted and Plaintiffs' counsel is unable to agree to the relief sought by this Motion. Counsel for American Building Materials, Inc. has no objection to the relief sought by this Motion.

/s/ Charles A. Carlson
Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of May, 2011, I electronically filed the foregoing, KB Home's Motion for Continuance of Summary Judgment Proceedings Pursuant to Rule 56(d) and Memorandum of Law by using the Court's CM/ECF system which will send electronic notice of this filing to all counsel of record.

/s/ Charles A. Carlson
Attorney

bbkldocs-#521219-v1-rule_56(d)_mo.doc